IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DEBBIE FLORES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04-1689-HO |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

    Plaintiff brings this proceeding pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner's final decision denying plaintiff's application for social security disability benefits and supplemental security income. Plaintiff asserts disability beginning July 1, 1999, due to depression, anxiety and obesity. After a hearing, an administrative law judge (ALJ) determined that plaintiff is not disabled.

1 - ORDER

Plaintiff contends the ALJ erred in: (1) omitting impairments from his finding of plaintiff's severe impairments; (2) rejecting an examining psychologist's opinion; (3) rejecting plaintiff's testimony; and (4) relying on a deficient vocational hypothetical.

1.   Severe Impairments

At step two of the disability inquiry, the ALJ must consider the combined effect of all of the plaintiff's impairments on her ability to function, without regard to whether each alone was sufficiently severe.   See 42 U.S.C. § 423(d)(2)(B)(Supp. III 1991); Social Security Ruling 868 ("SSR 86-8").  See also SSR 85-28.  Also, he is required to consider plaintiff's subjective symptoms, such as pain or fatigue, in determining severity. SSR 88-13; 20 C.F.R. § 404.1529(d)(2)(effective 11/14/91) (adopting SSR 88-13).   The step-two inquiry is a de minimis screening device to dispose of groundless claims. Bowen v. Yuckert, 482 U.S. at 153-54, 107 S.Ct. at 2297-98.  An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." See SSR 85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)(adopting SSR 85-28).

The ALJ assessed plaintiff's severe impairments as left knee degenerative joint disease, morbid obesity, a dysthymic disorder, and a personality disorder.  Tr. 14.  Plaintiff contends that ALJ erred

2 - ORDER

in failing to include depression, venous stasis or borderline personality disorder in his assessment.

The ALJ found plaintiff's depression to be non-severe because plaintiff is generally independent, able to drive, able to get along with others, socializes with friends on the internet, and her isolating behavior results from embarrassment about her weight. Tr. 18. The ALJ noted that medical assessment of plaintiff's depression has been severe at times but has improved and had a mild impact on memory, thought process, attention and is stable on medications. Tr. 17-18, 139, 143, 191, 322. The ALJ also relied on Dr. Dick Wimmers' assessment that plaintiff's affective disorder was best diagnosed as dysthymic disorder. Tr. 18, 260. The ALJ also noted that she responded well to medications when she took them. Tr. 17. Accordingly, the ALJ properly accounted for plaintiff's severe mental disorder by finding her to have a severe dysthemic disorder and did not err by finding her depression non-severe.

The record shows that plaintiff's venous insufficiency was transient at worst and likely resulted from morbid obesity and the ALJ did not err in failing to find the condition severe. <u>See</u> Tr. 196, 200, 255, 309, 314.

Plaintiff contends that ALJ erred in failing to find borderline personality disorder severe. However, the ALJ included personality disorder as a severe impairment in his assessment.

3 - ORDER

### 2. Dr. Shelly Getzlaf

Plaintiff argues that the ALJ erred in rejecting examining psychologist Dr. Getzlaf's opinion that plaintiff suffered from major depressive disorder of a long standing nature that resulted in a marked limitation in social functioning and one to two episodes of decompensation.

Where an ALJ chooses to disregard the opinion of a examining physician, he must set forth clear and convincing reasons for doing so if the physician's opinion is not contradicted by another doctor. Smollen v Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If the physician's opinion is contradicted by another doctor and the ALJ wishes to disregard the opinion, the ALJ must set forth "specific, legitimate reasons for doing so that are based on substantial evidence in the record." Id. To meet this burden, the ALJ must set out a detailed analysis and thorough summary of the facts and conflicting clinical evidence, state his interpretation thereof, and make findings. Embrey v Bowen, 849 F.2d 418, 421 (9th Cir. 1988).

The ALJ noted that Dr. Getzlaf only saw plaintiff on one occasion. The ALJ also noted the opinion was based on the reports of plaintiff that plaintiff engaged in social avoidance and experienced occasional anger outbursts, was inconsistent with her opinion that plaintiff's depression was improving, and the record is lacking in evidence that plaintiff's symptoms were so severe as to be termed decompensation. Tr. 16, 18. While the record does reflect financial

difficulties, lack of willingness to take responsibility, resistence to change, it does not support the extreme nature of Dr. Getzlaf's opinion and contradicts the opinion. Tr. 103, 108-10, 118, 137, 157, 160, 164, 166, 175-76, 181, 188 414, 416.  The ALJ did not err in rejecting the opinion.

### 3.   Plaintiff's Testimony

Plaintiff testified to limitations that would preclude work. The ALJ found plaintiff only partially credible.

In rejecting a claimant's testimony, the ALJ must perform a two stage analysis.  Smolen v Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). The first stage is the Cotton test.  Under this test a claimant must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  All that is required of the claimant is that she produce objective evidence of an impairment or impairments and show that the impairment or impairments could produce some degree of the symptoms alleged.  In addition, there must be no evidence of malingering.  A claimant need not show that the impairments in fact did cause the symptoms.  Id. at 1281-82.  The claimant need not produce objective medical evidence of the symptoms themselves or their severity.  Id. at 1282.  Once a claimant produces evidence to meet the Cotton test and there is no evidence of malingering, then the analysis moves to the second stage.

5 - ORDER

Under the second part of the analysis, the ALJ must analyze the credibility of a claimant's testimony regarding the severity of her symptoms. The ALJ can reject a claimant's symptom testimony only if he makes specific findings, stating clear and convincing reasons for doing so. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ cannot reject a claimant's symptom testimony solely because it is not fully corroborated by objective medical findings. Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986).

In determining a claimant's credibility the ALJ may consider, for example:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. . . . In evaluating the credibility of the symptom testimony, the ALJ must also consider the factors set out in SSR 88-13. . . . Those factors include the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities.

Smolen, 80 F.3d at 1284.

The ALJ noted that plaintiff has not been compliant with treatment recommendations, has failed to consistently engage in mental health treatment, experiences significant improvement on medications when she takes them, that she has a tendency to exaggerate her symptoms, and spends up to 12 hours per day using the

6 - ORDER

computer and socializing on the internet. The ALJ also noted that testing reveals no deficiency in maintaining concentration, persistence and pace that she claimed to have. Tr 19-20. In addition, the ALJ noted that plaintiff was able to work until March 2002, a date well after her alleged on-set date. Tr. 13, 20. Accordingly, the ALJ did not err in finding plaintiff to lack credibility with regard to allegations of debilitating symptoms.

4.   Vocational Evidence

Plaintiff argues the ALJ's reliance on vocational testimony was error because the hypothetical given to the vocational expert failed to include all limitations. To the extent plaintiff contends the hypothetical should have included the limitations rejected as noted above, the ALJ did not err. Plaintiff also contends the hypothetical failed to include limitations noted in vocational rehabilitations records. The ALJ attributed lack of success at vocational rehabilitation to poor attitude rather than lack of ability. See Tr. 378. The ALJ properly included the limitations, he found supported by the record, in his hypothetical to the vocational expert. Thus, the vocational expert's opinion that plaintiff can work provides substantial evidence that plaintiff is not disabled.

CONCLUSION

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of

7 - ORDER

the Commissioner is affirmed and this proceeding is dismissed.

DATED this   12th   day of   May  , 2006.

                                        s/ Michael R. Hogan
                                        UNITED STATES DISTRICT JUDGE

8 - ORDER